NINA F. LOCKER, State Bar No. 123838
IGNACIO E. SALCEDA, State Bar No. 164017
EVAN L. SEITE, State Bar No. 274641
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (866) 974-7329
Email:      nlocker@wsgr.com
            isalceda@wsgr.com
            eseite@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,
Rajiv Ramaswami, Duston Williams, and Rukmini
Sivaraman*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ALEXANDER GORSLINE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NUTANIX, INC., RAJIV RAMASWAMI, DUSTON WILLIAMS, and RUKMINI SIVARAMAN, <br><br> Defendants. | CASE NO.:  4:23-cv-01827-YGR <br><br> **DECLARATION OF EVAN L. SEITE IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL L.R. 3-12** <br><br> Hon: Yvonne Gonzalez Rogers |

I, Evan L. Seite, hereby declare as follows:

1.     I am an attorney duly licensed to practice before all of the courts of the State of California and this Court.  I am a Member of Wilson Sonsini Goodrich & Rosati, P.C., counsel to all defendants in the above-captioned case, *Gorsline v. Nutanix, Inc., et al.*, No. 4:23-cv-01827-YGR (the "*Gorsline*" Action), and all defendants and the nominal defendant in *Bushansky v. Ramaswami, et al.*, No. 3:23-cv-02203-WHO (the "*Bushansky*" Action).  I submit this declaration in support of Defendants' Administrative Motion to Consider Whether Cases Should Be Related Pursuant to Civil Local Rule 3-12 (the "Administrative Motion").  I have knowledge of the matters stated herein and, should I be called upon, I could and would competently testify thereto.

2.     Defense counsel has conferred with counsel for plaintiff in the *Gorsline* Action and counsel for plaintiff in the *Bushansky* Action regarding the Administrative Motion, and they do not oppose the Administration Motion and agree that the *Bushansky* Action should be related to this action and reassigned to this Court.

3.     A true and correct copy of the *Bushansky* complaint, filed on May 5, 2023, and currently pending before the Honorable William H. Orrick, is attached as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 29th day of June, 2023, at Redwood City, California.

/s/ *Evan L. Seite*
Evan L. Seite

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

I, NINA F. LOCKER, am the ECF user whose ID and password are being used to file this Declaration of Evan L. Seite in Support of Defendants' Administrative Motion to Consider Whether Cases Should be Related Pursuant to Civil L.R. 3-12.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that Evan Seite has concurred in this filing.

Dated:  June 29, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ *Nina F. Locker*
        Nina F. Locker
        nlocker@wsgr.com

*Attorney for Defendants*
*Nutanix, Inc., Rajiv Ramaswami, Duston*
*Williams, and Rukmini Sivaraman*

# EXHIBIT A

Document1

Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Counsel for Plaintiff*

[Additional Counsel in Signature Block]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN BUSHANSKY derivatively on behalf of Nominal Defendant NUTANIX, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RAJIV RAMASWAMI, CRAIG CONWAY, MAX DE GROEN, VIRGINIA GAMBALE, STEVEN GOMO, DAVID HUMPHREY, GAYLE SHEPPARD, and BRIAN STEVENS, <br><br> Defendants, <br><br> and <br><br> NUTANIX, INC., <br><br> Nominal Defendant. | Civil Action No. <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Stephen Bushansky, by his undersigned attorneys, brings this stockholder derivative action on behalf of nominal defendant Nutanix, Inc. ("Nutanix" or the "Company") against the Board of Directors of the Company (the "Board") for their breaches of fiduciary duties, violations of the federal securities laws, and other misconduct that resulted in material damage to the Company and its stockholders. These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the

1

investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, transcripts of Nutanix conference calls with financial analysts and investors, news reports, financial analyst reports, and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## I.   NATURE OF THE ACTION

1.     This is a stockholder derivative action brought against the Nutanix Board for their violations of fiduciary duties and other misconduct, which resulted in substantial damage to the Company and its stockholders.

2.     Nutanix offers a comprehensive cloud platform to its customers including access to numerous third-party software applications which work in conjunction with Nutanix's platform. The flexibility of Nutanix's platform and freedom of choice is critical as an advantage in a highly competitive market. The Individual Defendants acknowledged their awareness of the material risks facing the Company in connection with its business model and, as such, knew of the necessity of implementing and maintaining internal controls to oversee and monitor those risks.

3.     Throughout 2021, in public filings and conference calls with financial analysts, the Company repeatedly touted its "diligent expense management" and continued investment in partnerships with third-party vendors as one of the keys to its success. However, in March 2023, the Company disclosed a weakness in its internal controls which led to the use of third-party software that was only on its platform for "evaluation purposes" to be used for more purposes than that which was contracted. Consequently, the Company owed the third-party software vendor additional fees, giving the lie to previous representations regarding "diligent expense management." The material weakness in internal controls resulted in the Company's inability to timely file its Quarterly Report for the second quarter of 2023.

4.      Following a nearly 8% drop in the Company's stop price as a result of the weakness in the internal controls, a securities class action was filed against the Company, Defendant Rajiv Ramaswami ("Ramaswami"), President and Chief Executive Officer ("CEO") of Nutanix, and the former and current Chief Financial Officers.  As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself, as well as its directors and officers.

5.      As a result of the Individual Defendants' breaches of fiduciary duty and other misconduct, Nutanix has sustained substantial damages and irreparable injury to its reputation. Through this action, Plaintiff seeks to recover for the Company its damages and remediate the internal control weaknesses that afflict Nutanix.

6.      Plaintiff did not make a demand prior to bringing this action because it would be futile.  The Company's directors are neither disinterested nor independent.  In the absence of this action, Nutanix will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II.      JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder, and for contribution claims pursuant to Section 21D of the Exchange Act.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      This Court has jurisdiction over each Defendant named herein because Nutanix maintains its headquarters and does substantial business in this District and, as such, each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9. This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

10. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), where the Company maintains its headquarters and where it conducts substantial business.

## III. PARTIES

### A. Plaintiff

11. Plaintiff Stephen Bushansky has been a holder of Nutanix stock since October 10, 2022, and has held Nutanix stock continuously since that time. As such, he was a stockholder at the time of the transactions complained of herein. Plaintiff will adequately represent the interests of Nutanix and its shareholders.

### B. Defendants

#### 1. Nominal Defendant Nutanix, Inc.

12. Nutanix is a Delaware corporation with its principal executive offices located at 1740 Technology Drive, Suite 150, San Jose, California 95110. Its common stock trades on the Nasdaq Stock Market under the ticker symbol "NTNX."

#### 2. Individual Defendants

13. Defendant Rajiv Ramaswami has served as President and CEO of the Company since 2020. As of October 11, 2022, Ramaswami owns 267,576 Nutanix Class A common shares. Since 2021, the Company paid Ramaswami the following compensation:

| YEAR | SALARY | STOCK AWARDS | NON-EQUITY INCENTIVE PLAN COMPENSATION | TOTAL |
|------|--------|--------------|----------------------------------------|-------|
| 2022 | $783,596 | $11,165,080 | $980,000 | $12,928,676 |
| 2021 | $515,151 | $36,350,054 | $943,600 | $37,808,805 |

14. Defendant Craig Conway ("Conway") is a Nutanix director since 2017. He is a member of the Compensation Committee and Nominating and Corporate Governance Committee.

4

As of October 11, 2022, Conway owns 49,681 Nutanix shares. In 2022, he received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|---|
| 2022 | $46,890 | $241,793 | $288,683 |

15. Defendant Max de Groen ("de Groen") is a Nutanix director since 2020. He is Chair of the Compensation Committee and a member of the Audit Committee. De Groen serves as a managing director at Bain Capital Private Equity LP ("Bain Capital") in the Technology, Media, and Telecommunications Vertical. In August 2020, Bain Capital made an investment of $750 million in Nutanix Convertible Senior Notes. As of October 11, 2022, de Groen owns 22,330 Nutanix shares. In 2022, he received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|---|
| 2022 | $58,014 | $241,793 | $299,807 |

16. Defendant Virginia Gambale ("Gambale") is Chair of the Board and a Nutanix director since 2020. She is Chair of the Nominating and Corporate Governance Committee and a member of the Audit Committee. As of October 11, 2022, Gambale owns 36,620 Nutanix shares. In 2022, she received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|---|
| 2022 | $137,425 | $241,793 | $379,218 |

17. Defendant Steven Gomo ("Gomo") is a Nutanix director since 2015. He is Chair of the Audit Committee and a member of the Nominating and Corporate Governance Committee. As of October 11, 2022, Gomo owns 120,060 Nutanix shares. In 2022, he received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|---|---|---|---|
| 2022 | $56,096 | $241,793 | $297,889 |

18.     Defendant David Humphrey ("Humphrey") is a Nutanix director since 2020.  He is a member of the Nominating and Corporate Governance Committee and the Security and Privacy Committee.  Defendant Humphrey serves as a management director in the Technology, Media and Telecommunications Vertical at Bain Capital and is the Co-Head of Bain Capital's North America Private Equity businesses.  In August 2020, Bain Capital made an investment of $750 million in Nutanix Convertible Senior Notes.  As of October 11, 2022, Humphrey owns 22,330 Nutanix shares.  In 2022, he received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|------|------|------|------|
| 2022 | $42,124 | $241,793 | $283,917 |

19.     Defendant Gayle Sheppard ("Sheppard") is a Nutanix director since 2022.  She is a member of the Compensation Committee and the Security and Privacy Committee.  As of October 11, 2022, Sheppard owns 7,484 Nutanix shares.  In 2022, she received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|------|------|------|------|
| 2022 | $31,288 | $194,883 | $226,171 |

20.     Defendant Brian Stevens ("Stevens") is a Nutanix director since 2019.  He is Chair of the Security and Privacy Committee and a member of the Compensation Committee.  As of October 11, 2022, Stevens owns 34,565 Nutanix shares.  In 2022, he received the following compensation:

| YEAR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | TOTAL |
|------|------|------|------|
| 2022 | $47,178 | $241,793 | $288,971 |

## IV.     THE INDIVIDUAL DEFENDANTS' DUTIES

21.     By reason of their positions as officers or directors of Nutanix and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe Nutanix and its shareholders, fiduciary obligations of loyalty, good faith, due care,

and candor, and were and are required to use their utmost ability to control, manage, and oversee Nutanix in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Nutanix and its shareholders to benefit all shareholders equally and not in furtherance of their own personal interests or benefit.

22. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Nutanix were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

23. As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on the Nasdaq, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete, and truthful information concerning Nutanix's financial condition, operations, products, internal controls, and business prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with the SEC all material facts so that the market price of the Company's shares would be based upon accurate information. In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Nutanix's management, policies, and internal controls.

24. At all times relevant hereto, the Individual Defendants were the agents of each other and Nutanix and were always acting within the course and scope of such agency.

25. The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Nutanix.

**A.      Duties Under Nutanix Code Of Business Conduct And Ethics**

26. Nutanix's Code of Business Conduct and Ethics ("Code of Conduct") applies to, among others, "the directors, executives, employees" of Nutanix.

27. The Code of Conduct prohibits unethical and illegal practices and requires compliance with all laws and regulations applicable to Nutanix's business:

> Honest and ethical conduct is critical to our business…. You are responsible for complying with all laws, rules, regulations and regulatory orders applicable to the conduct of our business.

***

> Violations of laws, rules, regulations and orders may subject you to individual criminal or civil liability, in addition to discipline by Nutanix. Violations may also subject Nutanix to civil or criminal liability or the loss of business.

28. The Code of Conduct requires the full and accurate reporting of financial information:

> As a public company, we are required to follow strict accounting principles and standards, to report financial information accurately and completely in accordance with these principles and standards, and to have appropriate internal controls and procedures to ensure that our accounting and financial reporting complies with law. The integrity of our financial transactions and records is critical to the operation of our business and is a key factor in maintaining the confidence and trust of our employees, security holders and other stakeholders.

29. The Code of Conduct further requires that all director level employees or higher ensure compliance with all relevant financial rules, controls, and procedures:

> It is important that all transactions are properly recorded, classified and summarized in our financial statements, books and records in accordance with our policies, controls and procedures, as well as all generally accepted accounting principles, standards, laws, rules and regulations for accounting and financial reporting. If you have responsibility for or any involvement in financial reporting or accounting, you should have an appropriate understanding of, and you should seek in good faith to adhere to, relevant accounting and financial reporting principles, standards, laws, rules and regulations and Nutanix's financial and accounting policies, controls and procedures…. ***If you are a director level employee or higher, you should seek to ensure that the internal controls and procedures in your business area are in place, understood and followed.***[1]

30. The Code of Conduct discusses the importance of full and accurate recordkeeping:

> It is important that those who rely on records and reports—managers and other decision makers, creditors, customers and auditors—have complete, accurate and timely information. False, misleading or incomplete information undermines Nutanix's ability to make good decisions about resources, employees and programs and may, in some cases, result in violations of law. Anyone involved in preparing financial or accounting records or reports, including financial statements and schedules, must be diligent in assuring that those records and reports are complete, accurate and timely. ***Anyone representing or certifying as to the accuracy of such records and reports should make an inquiry or review adequate to establish a good faith belief in their accuracy.***

---

[1] All emphasis herein has been added unless otherwise indicated.

31. The Code of Conduct states that "Nutanix expects you, regardless of whether you are otherwise required to be familiar with finance or accounting matters, to use all reasonable efforts to ensure that every business record or report with which you deal is accurate, complete and reliable, and recorded in accordance with Company policies."

32. The Code of Conduct prohibits the misrepresentation of Nutanix's financial condition or compromising the integrity of Nutanix's reports, records, policies, and procedures including, *inter alia*:

- reporting information or entering information in Nutanix's books, records or reports that fraudulently or intentionally hides, misrepresents or disguises the true nature of any financial or non-financial transaction or result;

- establishing any undisclosed or unrecorded fund, account, asset or liability for any improper purpose;

- entering into any transaction or agreement that accelerates, postpones or otherwise manipulates the accurate and timely recording of revenues or expenses;

- misclassifying transactions as to accounts, business units or accounting periods; or

- knowingly assist others in any of the above.

33. The Code of Conduct imposes an obligation to investigate and report potential violations, including making appropriate inquiries in the event of knowledge of, *inter alia*:

- financial results that seem inconsistent with underlying business performance;

- inaccurate financial records;

- the circumventing of mandated review and approval procedures;

- transactions that appear inconsistent with good business economics; or

- the absence or weakness of processes or controls.

34. The Code of Conduct requires the report of questionable accounting or auditing conduct to the Audit Committee:

> If you believe that questionable accounting or auditing conduct or practices have occurred or are occurring, you should notify the Audit Committee of the Board of Directors. In particular, the Chief Executive Officer…should promptly bring to the attention of the Audit Committee any information of which he or she may become aware concerning:
>
> - the accuracy of material disclosures made by Nutanix in its public filings;

- material weaknesses or significant deficiencies in internal control over financial reporting;

- any evidence of fraud that involves an employee who has a significant role in Nutanix's financial reporting, disclosures or internal controls or procedures; or

- any evidence of a material violation of the policies in this Code regarding financial reporting.

35. The Code of Conduct states that the Board or its designated committee "will be responsible for investigating violations and determining appropriate disciplinary action for matters involving members of the [Board] or executive officers."

**B.      Additional Duties Under The Corporate Governance Guidelines**

36. The Corporate Governance Guidelines detail additional obligations for serving on the Board, including reporting circumstances that may reflect badly on another director or the Company to the Nominating and Corporate Governance Committee:

> When a director, including any director who is currently an officer or employee of the Company, becomes aware of circumstances that may adversely reflect upon the director, any other director, or the Company, the director should notify the Nominating Committee of such circumstances. The Nominating Committee will consider the circumstances, and may in certain cases request the director to cease the conflicting activity, or in more severe cases, request that the director submit his or her resignation from the Board if, for example, continuing service on the Board by the individual is not consistent with the criteria deemed necessary for continuing service on the Board.

**C.      Additional Duties Of Audit Committee Members**

37. The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, among other things, the Company's risk management practices and policies, the integrity of the Company's financial statements, the Company's compliance with legal and regulatory requirements, and the effectiveness and performance of the Company's internal audit function.

38. The Audit Committee has additional powers and obligations, including:

- Reviewing the Company's annual audited and quarterly unaudited financial statements and annual and quarterly reports on Form 10-K and 10-Q, including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations";

10

- Reviewing the reports and certifications regarding internal control over financial reporting and disclosure controls and procedures;

- Reviewing any major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls;

- Reviewing the quality and adequacy of the Company's internal controls, and discussing with management and the independent auditor any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls and any special audit steps adopted in light of material control deficiencies;

- Reviewing the Company's disclosure controls and procedures, as well as the quarterly assessments of such controls and procedures by the Chief Executive Officer and Chief Financial Officer;

- Reviewing and discussing with management (including, as appropriate, the Chief Legal Officer and the Head of Compliance), and the internal auditors, if applicable: (i) the overall adequacy and effectiveness of the Company's legal, regulatory and ethical compliance programs, including the Company's Code of Conduct, and (ii) reports regarding compliance with applicable laws, regulations and internal compliance programs;

- Discussing with the Chief Legal Officer any legal matters that may have a material impact on the financial statements or the Company's compliance procedures;

- Reviewing and discussing with management, the internal auditors, if applicable, and the independent auditor the Company's major financial risk exposures and the steps management has taken to monitor and control those exposures, including the Company's guidelines and policies with respect to risk assessment and risk management; and

- Reviewing any matters required to be communicated to the Audit Committee under generally accepted auditing standards and other legal or regulatory requirements.

**D.  Additional Duties Of Nominating And Corporate Governance Committee Members**

39.  The Charter of the Nominating and Corporate Governance Committee sets forth additional duties for its members, including obligations relating to overseeing the development and adequacy of the Corporate Governance Guidelines, including:

- Developing and monitoring the Corporate Governance Guidelines applicable to the Company;

- Reviewing annually the Corporate Governance Guidelines and their application, and recommending any changes deemed appropriate to the Board for its consideration;

11

- Overseeing the Company's corporate governance practices, including reviewing and recommending to the Board for approval any changes to the Company's corporate governance framework, including its certificate of incorporation and by-laws; and

- Reviewing the disclosure included in the Company's proxy statement regarding the Company's director nomination process and other corporate governance matters.

## V.        SUBSTANTIVE ALLEGATIONS

### A.        Background

40.        Nutanix provides a cloud platform that is comprised of a "hybrid cloud infrastructure, multi-cloud management along with unified storage, database services, and desktop services to support any application and workload, in any location."[2]  To optimize its customer experience, Nutanix works to make its platform work in conjunction with software from third-party providers.  In the Company's Annual Report  on Form 10-K filed with the SEC on September 21, 2021 (the "2021 10-K"), which was signed by Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens,[3] the Company touted the transformation of its "software solutions into a comprehensive enterprise cloud platform," utilizing "third-party public cloud infrastructures for maximum flexibility."  The Company is focused on engineering "our software solutions to run on a variety of server platforms."

41.        The use of third-party software gives Nutanix's cloud platform a competitive edge, giving its "customers more choice."  To test out the third-party software, Nutanix pays an upfront reduced "evaluation price" for third-party software and then, after beta testing the software and concluding that the product fits into Nutanix's business model, the Company will pay the full price to the software vendor to use the product on Nutanix's platform.

---

[2]        https://www.nutanix.com/what-we-do.

[3]        Defendant Ramaswami certified pursuant to the Sarbanes Oxley Act of 2002 ("SOX"), that the 10-K fully complied with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the 10-K fairly presented, in all material respects, the financial condition and results of operations of the Company.

42. The 2021 10-K discussed the Company's growth strategy which included maintaining a "full enterprise cloud platform that is designed to support a wide variety of workloads across private, public, and hybrid multicloud deployments."

**B.    The Individual Defendants Knew The Material Risks Regarding Nutanix's Core Operations**

43. In the 2021 10-K, Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens acknowledged their awareness of the material risks resulting from Nutanix's reliance on the use of third-party software applications:

> Our solutions provide a platform on which software applications and hypervisors from different software providers run. As a result, our solutions must interoperate with our end customers' existing hardware and software infrastructure, specifically their networks, servers, software and operating systems, as well as the applications that they run on this infrastructure, which may be manufactured and provided by a wide variety of vendors and OEMs.[4]
>
> ***
>
> We plan to continue to strengthen and expand our network of channel partners and OEMs to increase sales to both new and existing end customers. We believe that increasing channel leverage, particularly as we expand our focus on opportunities in commercial accounts, by investing in sales enablement and co-marketing with our partners and OEMs in the long term will extend and improve our engagement with a broad set of end customers. Our business and results of operations will be significantly affected by our success in leveraging and expanding our network of channel partners and OEMs.

44. In the 2021 10-K, Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens acknowledged their awareness of the material risks that could impede Nutanix's ability to interoperate with these third-party software applications:

> Developing solutions that interoperate properly requires substantial partnering, capital investment and employee resources, as well as the cooperation of the vendors or developers of the software applications and hypervisors both with respect to product development and product support. Vendors may not provide us with early or any access to their technology and products, assist us in these development efforts, certify our solutions, share with or sell to us any APIs, formats, or protocols we may need, or cooperate with us to support end customers. … If any of the foregoing occurs, our product development efforts may be delayed or impaired, our solutions could become less attractive to end customers resulting in a decline in sales, and our business, operating results and prospects may be adversely affected.

---

[4]    OEM refers to Nutanix's original equipment manufacturers.

13

45.     In the 2021 10-K, Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens also acknowledged their awareness of the material risks connected to internal control weaknesses:

> ***If we fail to maintain an effective system of internal controls, our ability to produce timely and accurate financial statements or comply with applicable regulations could be impaired.***
>
> Our current controls and any new controls that we develop may become inadequate because of changes in conditions in our business.  Further, weaknesses in our internal controls may be discovered in the future.  Any failure to develop or maintain effective controls, or any difficulties encountered in their implementation or improvement, could harm our operating results or cause us to fail to meet our reporting obligations and may result in a restatement of our financial statements for prior periods.  Any failure to implement and maintain effective internal controls also could adversely affect the results of periodic management evaluations and annual independent registered public accounting firm attestation reports regarding the effectiveness of our internal control over financial reporting that we are required to include in our periodic reports we will file with the SEC under Section 404 of the Sarbanes-Oxley Act. Ineffective disclosure controls and procedures and internal control over financial reporting could also cause investors to lose confidence in our reported financial and other information, which would likely have a negative effect on the market price of our securities [Emphasis in original].

46.     In the 2021 10-K, Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens acknowledged that a failure in internal controls could increase operating costs and affect the Company's ability to remain listed on the Nasdaq stock market.

47.     On September 21, 2022, Nutanix filed with the SEC its Annual Report on Form 10-K, which was signed by all the Individual Defendants, reporting the Company's financial results for the fiscal year ended July 31, 2022 (the "2022 10-K").[5]  The 2022 10-K contained similar risk disclosures to the ones outlined above in the 2021 10-K.

## C.      The Company Represents That It Maintains Disciplined Expense Management

---

[5]     Defendant Ramaswami certified pursuant to SOX, that the 10-K fully complied with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the 10-K fairly presented, in all material respects, the financial condition and results of operations of the Company.

14

48. In the 2021 10-K, Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens represented that Nutanix was focused on developing its cloud platform with new features, services and products: "We intend to continue to invest heavily in developing our enterprise cloud platform with new features, services and products to expand our market opportunity in both core and adjacent markets."

49. Further, Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens represented that Nutanix was focused on deepening "engagement with current channel, OEM, cloud and ecosystem partners and establish additional routes to market to enhance sales." The Company also emphasized that it would "continue to establish partnerships with cloud and ecosystem partners to provide our customers with freedom of choice."

50. Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens stated that Nutanix was committed to balancing investment in rapid growth with its overall financial health:

We intend to continue investing in our rapid growth, while balancing such growth against our operating expenses. By maintaining this balance, we believe we can drive toward our high growth potential without sacrificing our overall financial health. Key drivers of our path towards profitability include growth in renewals happening at a much lower cost compared to new sales and continuing to leverage sales and marketing efficiencies.

51. Defendants Ramaswami, Conway, de Groen, Gambale, Gomo, Humphrey, and Stevens further represented in the 2021 10-K that the Company's internal controls were effective:

Our management evaluated the effectiveness of our internal control over financial reporting using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission in Internal Control-Integrated Framework (2013). Based on the results of our evaluation, our management has concluded that our internal control over financial reporting was effective as of July 31, 2021.

52. On November 23, 2021, the Company held a conference call with financial analysts and investors to discuss the Company's first quarter financial results. Defendant Ramaswami touted the Company's revenue growth of "21% year-over-year, our highest growth rate in over 3 years despite seeing expected term compression." Ramaswami emphasized the Company's "*diligent expense management*" which combined with other factors, "enabled us to nearly achieve

15

free cash flow breakeven in the quarter, putting us well on track to achieving our target of sustainable positive free cash flow by the second half of calendar year 2022. We achieved these results while continuing to add to our backlog."

53. Ramaswami stated that "we are pleased with our fiscal first quarter financial results and believe we remain on track to achieving our target of 25% plus annualized contract value ("ACV") billings growth through fiscal year 2025."

54. Ramaswami reiterated that the Company was focused on expanding its partnerships with third-party software providers: "[W]e are going forward [and] expanding our go-to-market collaboration, including bringing in channel global systems integrators and our OEM partners."

55. Ramaswami stated that there would not be much change regarding existing partnerships and that the Company was more disciplined in execution:

> We continue to focus on our value proposition with our customers and continuing to work with all the partners that we talk about, right? . . . [A]t this point, really no change in our -- in the competitive landscape. We continue to see a higher win ratio for us. Partly perhaps because our pipeline discipline has gone better, and we are much more disciplined in terms of our execution.

56. On December 2, 2021, Nutanix filed with the SEC its Quarterly Report on Form 10-Q reporting financial results for the period ended October 31, 2021 ("1Q22 10-Q").[6]

57. In the 1Q22 10-Q, the Company reported that its internal controls and procedures were effective:

> Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act, as of the end of the period covered by this report. ***Based on management's evaluation, our principal executive officer and principal financial officer concluded that our disclosure controls and procedures are effective at a reasonable assurance level.***

---

[6] Defendant Ramaswami certified pursuant to SOX, that the 10-Q fully complied with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the 10-Q fairly presented, in all material respects, the financial condition and results of operations of the Company.

58.     On March 2, 2022, Nutanix held a conference call with financial analysts and investors to discuss its financial results for the second quarter of its fiscal 2022.  Ramaswami focused on increased ACV billings and revenue:

> Taking a closer look, our second quarter reflected continued execution on our subscription model and was marked by strong top and bottom line performance. We delivered record ACV billings, which grew 37% year-over-year, our highest growth rate in 3 years. Our revenue also grew 19% year- over-year despite seeing expected term competition.

59.     Ramaswami again touted the Company's diligent expense management:

> Once again, we saw good linearity, which combined with **diligent expense management**, enabled us to generate positive free cash flow for the first time since we started our transition to subscription, approximately 3 years ago, putting us well on track to achieving our target of sustainable positive free cash flow by the second half of calendar year 2022.

60.     Chief Financial Officer Duston Williams ("Williams") also emphasized the Company's discipline regarding operating expenses: "[W]e continue to have very good discipline on the OpEx and that will continue."

61.     Ramaswami touted the Company's competitive edge due to the "flexibility and freedom of choice" the Company offered: "We are continuing to win in our fair share and more of the market because of the platform, the robustness, the scale, the simplicity, the flexibility and freedom of choice that we offer and, of course, our focus on customer delight.  So that's the competitive angle."

62.     On March 10, 2022, the Company filed with the SEC its Quarterly Report on Form 10-Q reporting the Company's financial results for the period ended January 31, 2022. (the "2Q22 10-Q").[7]  The 2Q22 10-Q reported that the Company's internal controls and procedures were effective:

> Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an

---

[7]     Defendant Ramaswami certified pursuant to SOX, that the 10-Q fully complied with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the 10-Q fairly presented, in all material respects, the financial condition and results of operations of the Company.

evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act, as of the end of the period covered by this report. ***Based on management's evaluation, our principal executive officer and principal financial officer concluded that our disclosure controls and procedures are effective at a reasonable assurance level.***

63. On May 25, 2022, in a conference call with financial analysts and investors to discuss the Company's third-quarter 2022 financial results, Defendant Ramaswami discussed revenue growth for the quarter and the Company's "diligent expense management":

> Our revenue, which continues to be affected by term compression, grew 17%. Topline growth, combined with ***diligent expense management*** and leverage from renewals drove a sharp year-over-year improvement in non-GAAP operating income. While timing of collections adversely impacted our free cash flow performance for the quarter. We continue to prioritize working toward sustainable free cash flow generation in FY '23.

64. Ramaswami admitted to disappointment in "a weaker Q4 outlook due to … supply chain and sales rep headcount issues," but reassured investors that "we don't believe our reduced outlook is a reflection of any change in our market opportunity or demand for our solutions."

65. On June 2, 2022, Nutanix filed with the SEC its Quarterly Report on Form 10-Q, reporting financial results for the period ended April 30, 2022 (the "3Q22 10-Q").[8] In the 3Q22 10-Q, the Company represented that its internal controls and procedures were effective using similar language to the previous two quarters.

66. On August 31, 2022, the Company held a conference call with financial analysts and investors to discuss the Company's fourth quarter results. Defendant Ramaswami focused on progress with the Company's partners and expansion deals:

> Beyond these financial accomplishments, we had other important achievements, including launching our simplified product portfolio…making progress with our partners and continuing to delight our customers as reflected in our high [net promoter scores] and strong renewal performance. Overall, I'm pleased with our progress and financial performance in FY '22. As I noted, our fourth quarter was bolstered by a number of large expansion deals, including customers, both

---

[8] Defendant Ramaswami certified pursuant to SOX, that the 10-Q fully complied with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the 10-Q fairly presented, in all material respects, the financial condition and results of operations of the Company.

18

increasing their use of our Nutanix Cloud Platform and broadening their adoption of adjacent solutions in areas such as storage, Database as a Service and cloud management.

67. Ramaswami again touted the Company's diligent expense management and top-line growth:

Finally, we see the business achieving positive non-GAAP operating income and continuing to be free cash flow positive in FY23. We plan to do this through a combination of strong continued top line growth and ***diligent expense management***. We remain confident about the opportunity ahead of us and enter FY23 with a sense of excitement and cautious optimism.

68. Th Company's 2022 10-K contained the following statement regarding the effectiveness of the Company's disclosure controls and procedures:

Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended ("Exchange Act")) prior to the filing of this Annual Report on Form 10-K. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of the period covered by this Annual Report on Form 10-K, our disclosure controls and procedures were, in design and operation, effective at the reasonable assurance level.

69. The 2022 10-K also certified that the Company's internal controls over financial reporting was "effective as of July 31, 2022."

70. On November 30, 2022, Nutanix held a conference call with financial analysts and investors to discuss the Company's first-quarter financial results for 2023. Ramaswami touted the Company's revenue growth and good expense management:

We delivered ACV billings and revenue above our guidance, driven by strong continued performance of our renewals business. We again demonstrated ***good expense management*** coming in slightly below our OpEx targets. Top line outperformance, combined with diligent expense management, enabled us to achieve positive non-GAAP operating income for the first time, another milestone in our drive towards sustainable, profitable growth.

71. Defendant Ramaswami further noted the Company's "strong billing linearity and collections" which "contributed to generation of $46 million of free cash flow, meaningfully exceeding our breakeven target and continuing our strong recent free cash flow performance."

72. Ramaswami closed his opening remarks by providing a bright outlook for future growth:

In closing, I'd like to provide some thoughts on our priorities and outlook. First, our overarching priority remains driving towards sustainable profitable growth through judicious investment in the business, execution on a growing base of renewals and diligent expense management. Our achievement of positive non-GAAP operating income in the first quarter represents tangible progress towards this core. The strength of our business model is underpinned by a growing base of renewals and the strong value proposition of our platform in an uncertain macro landscape. I remain confident in our ability to continue to capitalize on the vast opportunity in front of us while driving towards sustainable, profitable growth.

73. Ramaswami later pointed to the Company's efficient execution:

I would just say that we are not as much focused on cost-cutting. I mean a lot of the efficiency in the model is coming from the fact that we're seeing a growing base of renewals that can be prosecuted at a significantly lower cost than our traditionally new business. Now we have been focused on efficiencies already over the last few years in every area…. We have simplified our product portfolio. So we have been doing the right things in terms of efficiency and so forth.

74. On December 7, 2022, the Company filed with the SEC its Quarterly Report on Form 10-Q reporting financial results for the quarter ended October 31, 2022 (the "Q123 10-Q").[9] The Q123 10-Q again reported the effectiveness of the Company's disclosure controls and procedures:

Under the supervision and with the participation of our management, including our principal executive officer and principal financial officer, we conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act, as of the end of the period covered by this report. Based on management's evaluation, our principal executive officer and principal financial officer concluded, as of the end of the period covered by this report, that *our disclosure controls and procedures are effective at a reasonable assurance level*.

**D. The Company Discloses A Failure In Its Internal Controls**

75. On March 6, 2023, Nutanix filed with the SEC a Current Report on Form 8-K and attached a press release from that day detailing selected preliminary second quarter financial results.

---

[9] Defendant Ramaswami certified pursuant to SOX, that the 10-Q fully complied with the requirements of Section 13(a) or 15(d) of the Exchange Act and that the information contained in the 10-Q fairly presented, in all material respects, the financial condition and results of operations of the Company.

76. While Defendant Ramaswami was quoted in the press release as touting "a solid second quarter financial performance against an uncertain macro backdrop, underpinned by the strength of our subscription-based business model," the press release went on to reveal that Nutanix management discovered that the Company was misusing evaluation software and the Audit Committee had opened an investigation into the matter:

> Company management discovered that certain evaluation software from one of its third-party providers was instead used for interoperability testing, validation and customer proofs of concept over a multi-year period. The Audit Committee commenced an investigation into this matter, which is still ongoing, with the assistance of outside counsel. The Company does not believe that this will have a significant impact on the fundamentals of its business and overall prospects.

77. The Company stated that it was likely to incur "additional costs to address the additional use of the software" and would not be able to timely file with the SEC its Quarterly Report on Form 10-Q for the second quarter of its fiscal 2023:

> The Company is in the process of assessing the financial reporting impact of this matter and it is likely that additional costs would be incurred to address the additional use of the software. As a result, the Company has not provided financial information regarding expenses in its second quarter fiscal 2023 preliminary results, or in its outlook for the third quarter or full fiscal year 2023. While the Company is working to complete its review of this matter as soon as possible, it does not expect to be able to file its Quarterly Report on Form 10-Q for the quarter ended January 31, 2023, on time or following the 5-day prescribed extension period allowed under 12b-25.

78. On the same day, Nutanix held a conference call to discuss the second quarter financial results. The new CFO, Rukmini Sivaraman ("Sivaraman"), revealed that the Company would be "rescheduling our Investor Day we had intended to hold on April 4, 2023, to summer of 2023 and will provide a specific date once it is confirmed." Defendant Ramaswami provided further details on the additional costs to be incurred by the Company. Ramaswami acknowledged that because the software that was "intended to be used for evaluation software" was instead "being used for inoperability, validation and proof of concept," Nutanix used the third party at a lower cost and would incur a further remunerating the software provider. Ramaswami insisted that the Company had not "qualified how much" that cost would be and could not go into "that kind of detail."

79. Following the disclosure relating to the failure in internal controls, the Company's stock price fell about 8% to close at $26.50 per share on March 7, 2023.

80. On March 16, 2023, Nutanix filed with the SEC a Current Report on Form 8-K and attached a press release from that day announcing that on March 15, 2023:

> [T]he Company received a standard notification letter from Nasdaq stating that, because the Company has not yet filed its Quarterly Report on Form 10-Q for the quarter ended January 31, 2023, the Company is not in compliance with Nasdaq Listing Rule 5250(c)(1), which requires timely filing of all required periodic financial reports with the [SEC].

> ***

> Under Nasdaq listing rules, the Company has 60 calendar days from the date of the letter to submit a plan to regain compliance. If Nasdaq accepts the plan, Nasdaq can grant an exception of up to 180 calendar days from the 10-Q's original due date, or until September 11, 2023, to regain compliance.

**E.      Nutanix Is Sued In A Securities Class Action Lawsuit**

81. On April 14, 2023, a securities class action lawsuit was filed in the United States District Court for the Northern District of California captioned *Gorsline v. Nutanix, Inc., et al.*, No. 4:23-cv-01827-YGR (N.D. Cal.) against the Company, Defendant Ramaswami, former CFO Williams, and current CFO Sivaraman, alleging violations of Sections 10(b) and 20(a) of the Exchange Act. Gorsline seeks damages on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Nutanix securities between September 21, 2021, and March 6, 2023, inclusive.

82. Gorsline alleges that the named defendants made materially false and misleading statements or failed to disclose that (i) the Company maintained deficient internal controls relating to its use of licensed software and expense management; (ii) as a result of these deficiencies, the Company improperly used third-party evaluation software for business purposes over a multi-year period; (iii) investigation and remediation of the foregoing—*i.e.*, by paying vendors the full cost to use their software for business purposes—would cause the Company to incur significant expenses; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**F.     Nutanix's False And Misleading Proxy Statement**

83.     On October 24, 2022, the Company filed its 2022 Proxy Statement with the SEC soliciting shareholder votes to, among other things, re-elect Defendants Ramaswami, Humphrey, and Sheppard to the Board and approve executive compensation.  The Proxy Statement was authorized by the Board and signed by Defendant Ramaswami.

84.     The 2022 Proxy Statement represents that the Board oversees and monitors the Company's risk exposures:

> Our Board oversees an enterprise-wide approach to risk management, which is designed to support the achievement of organizational objectives, including strategic objectives, to improve long-term organizational performance and to enhance stockholder value.  Our Board, as a whole, is responsible for determining the appropriate level of risk for our company, assessing the specific risks that we face and reviewing management's strategies for adequately mitigating and managing the identified risks.

85.     The 2022 Proxy Statement represents that the Audit Committee is engaged in vigorous oversight over risks to the Company, the adequacy of the Company's internal controls, and compliance with all legal and regulatory requirements:

> The Audit Committee considers and discusses our major financial risk exposures and the steps our management has taken to monitor and control these exposures, including guidelines and policies to govern the process by which risk assessment and management is undertaken.  The Audit Committee also monitors compliance with legal and regulatory requirements, in addition to oversight of the performance of our internal audit function.

86.     The 2022 Proxy Statement represents that the Nominating and Corporate Governance Committee monitors "the effectiveness of our corporate governance guidelines."

87.     The 2022 Proxy Statement represents that the Company engages in robust corporate governance practices: "We are strongly committed to good corporate governance practices.  These practices provide an important framework within which our Board and management can pursue our strategic objectives for the benefit of our stockholders."

88.     The foregoing statements in the 2022 Proxy Statement were false and misleading and omitted material information.  Contrary to the representations made in the Proxy, the Board was required but failed to: (1) implement and maintain an effective system of internal controls to

23

ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

89. On December 12, 2022, Nutanix filed with the SEC a Current Report on Form 8-K announcing, among other things, the re-election of Defendants Ramaswami, Humphrey, and Sheppard to the Board and the approval of executive compensation pursuant to the solicitations in the 2022 Proxy Statement.

## VI. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

90. Plaintiff brings this action derivatively and for the benefit of Nutanix to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and officers of Nutanix, and violations of Section 14(a) of the Exchange Act, as well as the aiding and abetting thereof, and to seek contribution for violations of Section 21D of the Exchange Act.

91. Nutanix is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

92. Plaintiff is, and has been at all relevant times, a stockholder of Nutanix and was a stockholder of the Company at the time of the transactions alleged herein. Plaintiff will adequately and fairly represent the interests of Nutanix in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to prosecute this action.

93. Demand upon the Board to institute this action against the Individual Defendants would be futile and is, therefore, excused. The Board is neither disinterested nor independent.

### A. Demand Upon Defendant Ramaswami Is Excused

94. Ramaswami is the President and CEO of Nutanix. Ramaswami therefore is not independent. Indeed, Nutanix's 2022 Proxy Statement does not list Ramaswami as an independent director.

24

95.     As an employee of Nutanix, the Company provides Defendant Ramaswami with his principal occupation from which he receives substantial compensation, including $12,928,676 in 2022 and $37,808,805 in 2021.  Thus, Ramaswami could not consider a demand for action that might require him to sue the directors who control his continued employment and compensation or fellow members of management with whom he works on a day-to-day basis.

96.     Ramaswami will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  As of October 11, 2022, Ramaswami beneficially owns 267,576 Nutanix Class A common shares.  If Ramaswami acknowledged that he, Nutanix, or others engaged in misconduct, his investment in Nutanix would be substantially devalued and his lucrative position jeopardized.  Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that he, as CEO of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

97.     Defendant Ramaswami is named as a defendant in the pending Securities Class Action.  As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

98.     Ramaswami signed the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

99.     Ramaswami benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Nutanix Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

100.    In August 2020, Bain Capital Private Equity LP made an investment of $750 million in Convertible Senior Notes to support Nutanix's growth initiatives.  As such, Ramaswami cannot consider a demand with required disinterest and independence to take action against Defendants Humphrey and de Groen who are current managing directors at Bain Capital, with Humphrey serving as Co-Head of Bain Capital's North America Private Equity businesses.

101. Ramaswami, as a director of Nutanix, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

102. Ramaswami is neither disinterested nor independent. Any demand upon Defendant Ramaswami is futile and, thus, excused.

**B. Demand Upon Defendant Conway Is Excused**

103. Conway will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of October 11, 2022, Conway beneficially owns 22,244 Nutanix Class A common shares. If Conway acknowledged that he, Nutanix, or others engaged in misconduct, his investment in Nutanix would be substantially devalued and his lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

104. Conway authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

105. Conway, as a director of Nutanix, was required to but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

106. In August 2020, Bain Capital Private Equity LP made an investment of $750 million in Convertible Senior Notes to support Nutanix's growth initiatives. As such, Conway, as

a Nutanix director, cannot consider a demand with the required disinterest and independence to take action against Defendants Humphrey and de Groen, who are current managing directors at Bain Capital, with Humphrey serving as Co-Head of Bain Capital's North America Private Equity businesses.

107. Conway failed to uphold his additional obligations as a member of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

108. Conway is neither disinterested nor independent. Any demand upon Defendant Conway is futile and, thus, excused.

**C.      Demand Upon Defendant de Groen Is Excused**

109. De Groen will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of October 11, 2022, de Groen beneficially owns 22,330 Nutanix Class A common shares. If de Groen acknowledged that he, Nutanix, or others engaged in misconduct, his investment in Nutanix would be substantially devalued and his lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

110. De Groen authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

111. Defendants de Groen and Humphrey have a long-standing business relationship, which precludes them from acting in an independent and disinterested manner. Both of them serve as managing directors at Bain Capital, which invested $750 million in Nutanix's growth initiatives, and both serve on the board of directors of Rocket Software Inc.

112. De Groen, as a director of Nutanix, was required to but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate,

and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

113. De Groen, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Nutanix's compliance with relevant laws, rules, and regulations. De Groen utterly failed to perform these essential duties.

114. De Groen is neither disinterested nor independent. Any demand upon Defendant de Groen is futile and, thus, excused.

**D.      Demand Upon Defendant Gambale Is Excused**

115. Gambale will not sue those responsible for the wrongdoing pled herein because doing so would harm her and her investments. As of October 11, 2022, Gambale beneficially owns 36,620 Nutanix Class A common shares. If Gambale acknowledged that she, Nutanix, or others engaged in misconduct, her investment in Nutanix would be substantially devalued and her lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that she, as Chair of the Board and a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

116. In August 2020, Bain Capital made an investment of $750 million in Convertible Senior Notes to support Nutanix's growth initiatives. As such, Gambale, as Chair of the Board and a Nutanix director cannot consider a demand with the required disinterest and independence to take action against Defendants Humphrey and de Groen who are current managing directors at Bain Capital, with Humphrey serving as Co-Head of Bain Capital's North America Private Equity businesses.

117. Gambale authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

118. Gambale, as a director of Nutanix, was required to but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with

all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

119. Gambale failed to uphold her additional obligations as Chair of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

120. Gambale, as a member of the Audit Committee, had duties regarding oversight of the risks facing the Company and Nutanix's compliance with relevant laws, rules, and regulations. Gambale utterly failed to perform these essential duties.

121. Gambale is neither disinterested nor independent. Any demand upon Defendant Gambale is futile and, thus, excused.

**E.     Demand Upon Defendant Gomo Is Excused**

122. Gomo will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of October 11, 2022, Gomo beneficially owns Nutanix 120,060 Class A common shares. If Gomo acknowledged that he, Nutanix, or others engaged in misconduct, his investment in Nutanix would be substantially devalued and his lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

123. Gomo authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

124. Gomo, as a director of Nutanix, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the

29

material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

125. In August 2020, Bain Capital made an investment of $750 million in Convertible Senior Notes to support Nutanix's growth initiatives. As such, Gomo, as a Nutanix director, cannot consider a demand with the required disinterest and independence to take action against Defendants Humphrey and de Groen who are current managing directors at Bain Capital, with Humphrey serving as Co-Head of Bain Capital's North America Private Equity businesses.

126. Gomo, as Chair of the Audit Committee, had duties regarding oversight of the risks facing the Company and Nutanix's compliance with relevant laws, rules, and regulations. Gomo utterly failed to perform these essential duties.

127. Gomo failed to uphold his additional obligations as a member of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

128. Gomo is neither disinterested nor independent. Any demand upon Defendant Gomo is futile and, thus, excused.

**F. Demand Upon Defendant Humphrey Is Excused**

129. Humphrey will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of October 11, 2022, Humphrey beneficially owns 22,330 Nutanix Class A common shares. If Humphrey acknowledged that he, Nutanix, or others engaged in misconduct, his investment in Nutanix would be substantially devalued and his lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

130. Humphrey authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

131. Humphrey benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing his re-election to the Nutanix Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

132. Humphrey, as a director of Nutanix, was required to but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

133. Defendants Humphrey and de Groen have a long-standing business relationship, which precludes them from acting in an independent and disinterested manner. Both of them serve as managing directors at Bain Capital, which invested $750 million in Nutanix's growth initiatives, and both serve on the board of directors of Rocket Software Inc.

134. Humphrey failed to uphold his additional obligations as a member of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of the Code of Conduct and Corporate Governance Guidelines.

135. Humphrey is neither disinterested nor independent. Any demand upon Defendant Humphrey is futile and, thus, excused.

**G.     Demand Upon Defendant Sheppard Is Excused**

136. Sheppard will not sue those responsible for the wrongdoing pled herein because doing so would harm her and her investments. As of October 11, 2022, Sheppard beneficially owns 7,484 Nutanix Class A common shares. If Sheppard acknowledged that she, Nutanix, or others engaged in misconduct, her investment in Nutanix would be substantially devalued and her lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that she, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

31

137. Sheppard authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

138. Sheppard benefited from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Nutanix Board through the false and misleading statements and material omissions in the 2022 Proxy Statement.

139. Sheppard, as a director of Nutanix, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

140. In August 2020, Bain Capital made an investment of $750 million in Convertible Senior Notes to support Nutanix's growth initiatives. As such, Sheppard, as a Nutanix director, cannot consider a demand with the required disinterest and independence to take action against Defendants Humphrey and de Groen who are current managing directors at Bain Capital, with Humphrey serving as Co-Head of Bain Capital's North America Private Equity businesses.

141. Sheppard is neither disinterested nor independent. Any demand upon Defendant Sheppard is futile and, thus, excused.

**H.  Demand Upon Defendant Stevens Is Excused**

142. Stevens will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. As of October 11, 2022, Stevens beneficially owns 34,565 Nutanix Class A common shares. If Stevens acknowledged that he, Nutanix, or others engaged in misconduct, his investment in Nutanix would be substantially devalued and his lucrative position jeopardized. Acknowledging that executives at Nutanix engaged in the wrongdoing alleged would be an admission that he, as a director of the Company, either knew of the wrongdoing or should have known of the wrongdoing.

32

143. Stevens authorized the 2022 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

144. Stevens, as a director of Nutanix, was required to but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

145. In August 2020, Bain Capital made an investment of $750 million in Convertible Senior Notes to support Nutanix's growth initiatives. As such, Stevens, as a Nutanix director, cannot consider a demand with the required disinterest and independence to take action against Defendants Humphrey and de Groen who are current managing directors at Bain Capital, with Humphrey serving as Co-Head of Bain Capital's North America Private Equity businesses.

146. Stevens is neither disinterested nor independent. Any demand upon Defendant Stevens is futile and, thus, excused.

**I.      Other Factors Demonstrating That Demand Upon The Nutanix Board Is Excused**

147. Nutanix has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will continue to suffer thereby.

148. The members of the Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

33

149. Publicly traded companies, such as Nutanix, typically carry director & officer liability insurance from which the Company could potentially recover some or all its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Nutanix's damages.

## VII. COUNTS

### COUNT ONE
**Against the Individual Defendants for**
**Violations of Section 14(a) of the Exchange Act**

150. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

151. The Section 14(a) claim alleged herein is based solely on negligence. It is not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claim alleged herein does not allege and does not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to those non-fraud claims.

152. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

153. Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or

34

which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

154. The 2022 Proxy Statement was materially false and misleading because the Individual Defendants were required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Nutanix's core operations and making truthful, accurate, and complete statements to investors and customers; (2) effectively oversee the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

155. The misleading information contained in the 2022 Proxy Statement was material to Nutanix shareholders in determining whether to elect Defendants Ramaswami, Humphrey, and Sheppard to the Board and to approve executive compensation.

156. The material misstatements and omissions in the 2022 Proxy Statement damaged the Company.

157. Plaintiff, on behalf of Nutanix, seeks relief for damages inflicted upon the Company based on the misleading 2022 Proxy Statement in connection with the improper election of Defendants Ramaswami, Humphrey, and Sheppard and the approval of executive compensation.

**COUNT TWO**
**Against the Individual Defendants**
**for Breach of Fiduciary Duties**

158. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

159. The Individual Defendants owed and owe fiduciary duties to Nutanix. By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Nutanix the highest obligation of good faith and loyalty in the administration of Nutanix's affairs, including assuring that Nutanix complied with state and federal laws governing, among other things, the making of truthful, complete, and accurate public statements regarding the Company's financial

35

condition and business prospects. The Board also had specific duties as defined by the Company's corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have prevented the misconduct and consequential harm to Nutanix alleged herein.

160. The Individual Defendants ignored their duties. The Individual Defendants failed to make a good faith effort to correct the problems or prevent their occurrence.

161. The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned, and abdicated their responsibilities and duties regarding prudently managing the business of Nutanix in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of good faith and loyalty in the management and administration of Nutanix's affairs and in the use and preservation of Nutanix's assets.

162. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Nutanix has sustained significant damages, not only monetarily, but also to its corporate image and goodwill. Such damages include, among other things, the costs of defending and resolving the pending Securities Class Action.

163. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**COUNT THREE**
**Against the Individual Defendants**
**for Contribution for Violations of 21D of the Exchange Act**

164. The conduct of the Individual Defendants, as described herein, has exposed the Company to significant liability under various federal securities laws by their misconduct.

165. Nutanix is named as a defendant in related securities class action lawsuit that alleges and assert claims arising under the federal securities laws. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If Nutanix is found liable for violating the federal securities laws, the Company's liability will

36

arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Individual Defendants as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

166.    As officers and directors, the Individual Defendants had the power or ability to, and did, control or influence, either directly or indirectly, Nutanix's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

167.    The Individual Defendants are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

168.    The Individual Defendants have damaged the Company and are liable to the Company for contribution.

**COUNT FOUR**
**Against the Individual Defendants**
**for Aiding and Abetting**

169.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

170.    Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

171.    In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, or assisted, each other in breaching their respective duties.

172. Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

173. Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Nutanix and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants violated Section 14(a) of the Exchange Act;

(c)    Declaring that the Individual Defendants have breached and aided and abetted the breach of their fiduciary duties to Nutanix;

(d)    Directing the Company to take all necessary actions to implement and maintain an effective system of internal controls and meaningful Board oversight;

(e)    Determining and awarding to Nutanix the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(f)    Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(g)    Awarding Nutanix restitution from the Individual Defendants, and each of them;

(h)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(i)     Granting such other and further relief as the Court may deem just and proper.

## IX.     JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: May 5, 2023                          **WEISS LAW**

**OF COUNSEL:**                   By:     */s/ Joel E. Elkins*
                                          Joel E. Elkins
**WEISS LAW**                             611 Wilshire Blvd., Suite 808
David C. Katz                             Los Angeles, CA 90017
Mark D. Smilow                            Telephone:  310/208-2800
305 Broadway, 7th Fl.                     Facsimile:   310/209-2348
New York, NY 10007
Telephone: (212) 682-3025                 *Attorneys for Plaintiff*
Facsimile: (212) 682-3010
Email: dkatz@weisslawllp.com
        msmilow@weisslawllp.com

Joshua M. Rubin
Jonathan Meer
4 Brighton Rd., Ste. 204
Clifton, NJ 07014
Email: jrubin@weisslawllp.com
        jmeer@weisslawllp.com